UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAYLEY AMIEL, on behalf of herself and all
others similarly situated,

                    Plaintiff,

          -against-

EVO BRANDS, LLC d/b/a PUFF BAR, and
PVG2, LLC, d/b/a Puff Bar,

                    Defendants.

**OPINION & ORDER**

24-CV-07327 (PMH)

PHILIP M. HALPERN, United States District Judge:

Hayley Amiel ("Plaintiff") commenced the instant putative class action, on behalf of herself and all others similarly situated, on September 27, 2024 (Doc. 1, "Compl."). Plaintiff presses four claims against EVO Brands, LLC and PVG2, LLC ("Defendants"), all stemming from Plaintiff's alleged purchases of Defendants' electronic cigarettes, identified as "Puff Bars." Specifically, Plaintiff pleads violations of Sections 349 and 350 of the New York General Business Law (Counts I and II); violations of "other state consumer protection statutes" (Count III); and breach of implied warranty of merchantability (Count IV). (*See* Compl.). Plaintiff also seeks an order certifying all claims in this action as a class action under Federal Rule of Civil Procedure 23. (*Id.*).

On October 10, 2024, Plaintiff served Defendants with Summonses and the Complaint and filed affidavits of such service on October 15, 2024. (Doc. 7; Doc. 8). Despite Defendants' counsel contacting Plaintiff's counsel on or about October 24, 2024, and engaging in communications to discuss a potential resolution of the case (*see* Doc. 34-2, "Richman Decl."), Defendants at that time, failed to answer or otherwise appear in this action. On December 6, 2024, the Court issued

an Order directing Defendants to respond to the Complaint by January 10, 2025. (Doc. 12). Defendants failed to comply with that Order.

Accordingly, on March 3, 2025, the Court issued an Order directing Plaintiff to seek entry of a default judgment in accordance with Rule 4(B) of the Court's Individual Practices. (Doc. 13). Plaintiff obtained a Clerk's Certificate of Default against Defendants on April 1, 2025. (Doc. 18). Thereafter, Plaintiff filed the instant motion, and the Court directed supplemental briefing on the timing of class certification and default judgment rulings. (Doc. 26; Doc. 33). Upon receipt of such briefing, the Court entered an order to show cause on May 16, 2025, as to why class certification pursuant to Rule 23 and entry of default judgment on liability only should not be entered against Defendants. (Doc. 40, "Order to Show Cause"). On June 16, 2025, Defendants filed a "Response to Order to Show Cause" (Doc. 49, "Defendants' Response") and a declaration by Nicholas Minas Alfaro, the co-chief executive officer of Defendants (Doc. 50, "Alfaro Decl.").[1] Upon direction of the Court, Plaintiff filed a brief in further support of her motion and in response to Defendants' brief on July 1, 2025. (Doc. 54 "Plaintiff's Reply"). Finally, on July 16, 2025, with leave of the Court, Defendants filed a "sur-reply." (Doc. 58, "Defendants' Sur-reply").[2]

The Court construes Defendants' Response and Sur-reply as both opposition to the pending motion for class certification and default judgment as well as for relief pursuant to Federal Rule of Civil Procedure 55(c). *See Otter Prods., LLC v. Jones*, No. 22-CV-07861, 2023 WL 2368975, at *1 (S.D.N.Y. Mar. 6, 2023).[3]

---

[1] On June 18, 2025, Defendants also filed a "Response to Order to Show Cause Amended to Correct Formatting Errors and Missing Language in Conclusion of Page 32." (Doc. 53). As this document was filed after the deadline and without leave of the Court, the Court declines to consider such document.

[2] The Parties impermissibly filed additional letters stemming from Defendants' Sur-reply without seeking leave of the Court. (*See* Doc. 59, "Plaintiff's 7/17/25 Letter"; Doc. 60, "Defendants' 7/22/25 Response"). Accordingly, the Court declines to consider both documents.

[3] Unless otherwise indicated, quotations omit internal citations, quotation marks, footnotes, and alterations.

For the reasons set forth below, Plaintiff's motion for class certification is DENIED and Plaintiff's motion for default judgment on liability only, and as to Plaintiff individually, is GRANTED in part and DENIED in part. Likewise, Defendants are not entitled to any relief pursuant to Rule 55(c).

## STANDARD OF REVIEW

### I.     Class Certification

As a threshold matter, that the Clerk of Court entered certificates of default against Defendants does not affect the Court's analysis for class certification, or Plaintiff's pending motion for default judgment. It is well-settled that "upon entry of a default, the factual allegations in the complaint, except as to damages, must be taken as true." *Katz v. Curis Pharmacy, LLC*, No. 22-CV-00644, 2023 WL 5769499, at *2 (S.D.N.Y. Sept. 7, 2023). However, "even after a default, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Leider v. Ralfe*, No. 01-CV-03137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004). Put simply, "[t]he Court has an independent duty to determine whether the requirements of Rule 23 are met regardless of Defendants' admissions." *Bruce E. Katz, M.D., P.C. v. Prof. Billing Collections, LLC*, No. 20-CV-03043, 2021 WL 2418387, at *2 (S.D.N.Y. June 14, 2021). Therefore, even though Defendants are deemed to have admitted the factual allegations in the complaint by default, the Court nevertheless must analyze those allegations to determine if the putative class is proper under Rule 23, prior to conducting a default analysis.

Certification of a class requires satisfaction of the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure. Specifically, Plaintiff must show by a preponderance of the evidence that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are

questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "[F]ailure to meet any of these requirements means that the class may not be certified." *Katz*, 2023 WL 5769499, at *5. Additionally, although not specifically set out in Rule 23(a), the Second Circuit recognizes the implied requirement of "ascertainability" which "requires that a class be definite enough for a court to determine whether a particular individual is a member." *Id.* at *3.

If, however, the Rule 23(a) prerequisites have been satisfied, Plaintiff must then show by a preponderance of the evidence that the proposed class is "maintainable" by meeting at least one of the requirements set forth in Rule 23(b) of the Federal Rules of Civil Procedure. *See Dukes*, 564 U.S. at 345; *see also Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) (Plaintiff need establish only one basis for certification under Rule 23(b)). Here, Plaintiff seeks to certify the class under Rule 23(b)(3), which requires, in relevant part, that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).[4]

"The plaintiff carries the burden of establishing by a preponderance of the evidence that each of the requirements of Rule 23 is met." *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 70 (S.D.N.Y. 2022). "The Court's determination involves a 'rigorous analysis,' to

---

[4] While it appears Plaintiff initially sought certification under both Rule 23(b)(3) and Rule 23(b)(2) (*see* Doc. 34 at 14-15; Doc. 35 at 10-14), Plaintiff withdrew her request for injunctive relief (23(b)(2)) in a subsequent supplemental filing (*see* Doc. 36 at 2 ("Because this matter will be resolved on default judgment without further litigation, Plaintiff will forego her request for prejudgment interest and for the Court to craft injunctive relief.")). Accordingly, the Court deems Plaintiff's request for injunctive relief withdrawn, and therefore the sole remaining basis for certification is under Rule 23(b)(3).

ensure actual, not presumed, conformance with Rule 23." *Id.* "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* "Merit based inquiries, at the class certification stage, however, are permitted only to the extent that they are relevant to determining whether the Rule 23 prerequisites are satisfied." *Id.*

II.    Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

Under Rule 55(b)(2), once the clerk has entered a default and where Plaintiff's claim for damages is not a sum certain, Plaintiff must establish her entitlement to a default judgment to the Court. Fed. R. Civ. P. 55(b)(2). The "district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." *Au Bon Pain Corp.*, 653 F.2d at 65. In a similar fashion, the Court does not accept blindly the allegations concerning damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).

Once a default has been entered, Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). "Because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Caleb & Brown Pty. Ltd. v. Thompson*, No. 20-CV-08612, 2021

WL 4226183, at *2 (S.D.N.Y. Sept. 16, 2021) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (alteration omitted)). "Good cause under Rule 55(c) should be construed generally, and the dispositions of motions for entries of defaults and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case." *Id.* (citation modified). "In determining whether to vacate a default or default judgment, the Court must consider three factors: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* (quoting *Del Med. Imaging Corp. v. CR Tech USA, Inc.*, No. 08-CV-08556, 2010 WL 1487994, at *4 (S.D.N.Y. Apr. 13, 2010)). Notably, "a finding of willfulness obviates the need to continue the inquiry with respect the existence of a meritorious defense and prejudice to plaintiffs." *Geis Const. South, LLC v. Delahunt*, No. 20-CV-03834, 2023 WL 2731692, at *5 (E.D.N.Y. Mar. 31, 2023) (quoting *Barnes v. Printron, Inc.*, No. 93-CV-05085, 1999 WL 335362, at *3 (S.D.N.Y. May 25, 2999)); *see also Jaramillo v. Vega*, 675 F. App'x 76, 76-77 (2d Cir. 2017). If the default is willful, generally courts will not vacate it. "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp.*, 10 F.3d at 98. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.*

## ANALYSIS

### I.    Class Certification

Defendants' arguments against class certification do not include any citation to case law to oppose Plaintiff's arguments. (Defendants' Response at 33-36; Defendants' Sur-reply at 4-5). Instead, Defendants state in a conclusory fashion that "[c]ertification of the class must not occur,"

as "[n]one of the four prerequisites are met including the numerosity of the class, common law or fact, typical claims or defenses of the tiny class that purchased the Defendants' products." (Defendants' Response at 35-36). The Court nevertheless "has an independent duty to determine whether the requirements of Rule 23 are met," and as detailed below, holds that Plaintiff has failed to show by a preponderance of the evidence that certification is warranted.

A.   Ascertainability

Plaintiff seeks certification of the following nationwide class: "all consumers who purchased disposable electronic cigarettes containing nicotine, sold under the brand name of Puff Bar [the 'Products'], within the United States between 2019 and 2024." (*See* Doc. 39). Plaintiff may also be seeking to certify a New York Subclass, defined as "all persons who purchased the Products . . . in New York during the Class Period." (Compl. at 113).

The implied requirement of "ascertainability" requires that "the class description must be sufficiently definite such that it is administratively feasible for a court to determine, by reference to objective criteria whether a particular individual is a member of the class." *Katz*, 2023 WL 5769499, at *3.

Setting aside the fact that Plaintiff does not address this implied requirement, Plaintiff fails to establish consistent language for the proposed Class and Subclass. Notably, the Proposed Order (Doc. 39) does not include a New York Subclass and states that the time period is between "2019 and 2024." The Complaint, on the other hand, includes the New York Subclass and states that the applicable time period for the Class is within the "applicable statute of limitations period . . . and until the date of class certification." Finally, the Richman Declaration identifies the Class Period as "approximately from 2019 . . . to at least 2023, the last year Plaintiff was able to purchase the Products." (*Compare* Doc. 39, *with* Compl. ¶¶ 112-113, *and* Richman Decl. ¶ 7 n.1). The absence

of clarity as to the contours of the proposed class(es) factors against a finding in favor of Plaintiff as to "ascertainability." *See B&R Supermarket, Inc. v. MasterCard International Inc.*, No. 17-CV-02738, 2018 WL 1335355, at *11-12 (E.D.N.Y. Mar. 14, 2018).

Further, Plaintiff has failed to establish how the putative class members, of which there is no established set number, could be ascertained using objective criteria. Instead, Plaintiff states that the "number can be surmised through sales data," but fails to clarify how a class member would confirm their purchase of the Products; whether the purchased Products contained the similar 5% nicotine mark as those Plaintiff complains of; or even whether a putative class member producing a receipt would realistically be sufficient to fall within the class without an accompanying non-speculative declaration. *See, e.g., Weiner v. Snapple Beverage Corp.*, No. 07-CV-08742, 2010 WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010) (holding that the "ascertainability" requirement was not met where Plaintiffs simply suggested that "the class members produce a receipt, offer a product label, or even sign a declaration" to confirm class status).

Accordingly, considering the above, Plaintiff has failed to sufficiently satisfy the implied requirement of "ascertainability."[5]

### B.  Numerosity

Even assuming Plaintiff meets the "ascertainability" requirement (she does not), Plaintiff fails to satisfy the numerosity requirement of Rule 23(a)(1). While Plaintiff need only establish that there are 40 or more members of the putative class for the Court to presume numerosity has been met, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), Courts in

---

[5] While the Court need not continue the Rule 23 analysis in light of Plaintiff's failure to meet this requirement, the Court nevertheless considers the other elements of Rule 23, mindful that "failure to certify an action . . . on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001).

this Circuit have held that movants still "must show some evidence of or reasonably estimate the number of class members." *See Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001). Notably, "where the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails." *Oscar v. BMW of North America, LLC*, 274 F.R.D. 498, 506 (S.D.N.Y. 2011).

Plaintiff alleges in her Complaint both that "[t]he precise number of the Class members and their identities are unknown . . . at this time but may be determined through discovery," and "Class members number in the thousands." (Compl. ¶¶ 117, 121; *see also* Doc. 34 at 9 ("While the precise number of the Class members and their identities are unknown, the number can be surmised through sales data.")). Plaintiff provides little support in her Complaint for these bare allegations, other than stating that the electronic cigarettes in question were sold "nationwide" and that they were the "most popular electronic cigarette brand in 2021 and 2022." (Doc. 35 at 8 (citing Compl. ¶¶ 16, 17, 66)). Plaintiff cites to what purports to be a Majority Staff Report of the United States Senate, entitled "The Youth Vaping Epidemic: Federal Regulation of E-cigarettes and the Rise of JUUL and Puff Bar," for the alleged premise that "there are many potential class members nationwide." (*See* Richman Decl. ¶ 45, Ex. R).

Considering the above, Plaintiff's speculative assertions of the numerosity of the class size are insufficient to satisfy by a preponderance of the evidence that this requirement is met. While Plaintiff does appear to blame in part the lack of discovery for her failure to sufficiently show numerosity (*see* Compl. at 117), Plaintiff has affirmatively requested that the Court *not* direct the parties to engage in class discovery as "efforts at class discovery would not yield appreciable evidence" "given Defendants' refusal to engage in the litigation process." (Doc. 35 at 6).

Accordingly, as the Court has "independently assess[ed] whether the requirements of Rule 23 have been met," Plaintiff has failed to meet the numerosity requirement.

### C. Commonality

Similarly, Plaintiff has not satisfied the commonality requirement of Rule 23(a)(2). "To satisfy commonality, plaintiffs must affirmatively demonstrate by a preponderance of the evidence that there are questions of law or fact common to the class." *Elisa W. v. City of New York*, 82 F.4th 115, 122-23 (2d Cir. 2023). "[C]ommonality turns on the ability of the action to 'generate common answers apt to drive the resolution of the litigation.'" *Id.* (quoting *Dukes*, 564 U.S. at 350). "Thus, commonality exists if there is a question such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Dukes*, 564 U.S. at 350). "This is the 'glue' that holds class members' claims together." *Id.* (quoting *Dukes*, 564 U.S. at 352). Finally, "merely raising common questions . . . is not sufficient to satisfy Rule 23(a)(2)," instead, Plaintiff must show that the class action is capable of "generating common answers apt to drive the resolution of the litigation." *See Pagan v. Abbott Laboratories, Inc.*, 287 F.R.D. 139, 148 (E.D.N.Y. 2012) (citing *Dukes*, 564 U.S. at 350)).

Here, Plaintiff does just what *Dukes* cautions against, and "merely rais[es]" four "common questions of law and fact." (*See* Doc. 35 at 8-9). Notably, Plaintiff fails to show that any of these questions are capable of "generating common answers apt to drive the resolution of the litigation." *Id.*

Accordingly, Plaintiff has failed to show by a preponderance of the evidence that the commonality requirement is met.[6]

---

[6] Plaintiff cites to two out of circuit, non-binding cases in support of her commonality argument: a Northern District of Mississippi case and Northern District of Ohio case. (*See* Doc. 34 at 10; Doc. 35 at 8-9). In fact, these are the only two cases Plaintiff cites as support for her entire class certification analysis, including both the analyses of the factors under Rule 23(a) and Rule 23(b)(3). (*See* Doc. 34 at 9-12, Doc. 35 at 8-11).

D. <u>Typicality</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Elisa W.*, 2023 WL 6066476, at *9; *Sacerdote v. New York Univ.*, No. 16-CV-06284, 2018 WL 840364, at *3 (S.D.N.Y. Feb. 13, 2018).

The analysis of this factor is similar to the previous analysis, as the commonality and typicality requirements "tend to merge." *Dukes*, 564 U.S. at 349 n.5. Here, similarly to the commonality requirement, Plaintiff has failed to sufficiently allege typicality. Plaintiff claims that her "claims are typical of the claims of the Class she seeks to represent," as she "purchased the Products with the misrepresentations and implied warranty at issue and was injured as a result." (Doc. 35 at 9). However, Plaintiff provides no actual explanation as to why Plaintiff is "a member of a well-defined class of similarly situated persons," or why such members are "owed the same relief," other than conclusory statements. (*Id.*). Further, and importantly, Plaintiff does not raise the issue that part of Plaintiff's claims turn on unlawful marketing and sales by the Defendants to individuals under the age of 21, the age Plaintiff claims to have been during the Class Period. (*See* Compl. at 35). Taking the above into consideration, Plaintiff may plainly not be a "similarly situated person[]," and therefore not "typical" of the class.

Accordingly, Plaintiff has not carried her burden to sufficiently show by a preponderance of the evidence that the typicality requirement is met.

E.  Adequacy

Under Rule 23(a)(4), the Court "must examine whether the named plaintiff's interests are antagonistic to those of the other proposed members of the class." *Buffington*, 342 F.R.D. at 72. The Rule 23(a)(4) adequacy requirement "serves to uncover conflicts of interest between named parties and the class[es] they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.*

As an initial matter, the Court finds that Plaintiff's counsel is qualified to conduct this litigation as class counsel. (*See* Compl. ¶ 119). While Plaintiff has shown that she is adequate because she has an interest in vigorously pursuing the claims of the class, as explained *supra*, it is unclear to the Court whether Plaintiff seeks the same relief as the class members she seeks to represent, or whether she has interests that are antagonistic to the class members.

However, as Plaintiff fails to carry her burden as to the previous three elements, as well as the implied "ascertainability" requirement, and as detailed *infra*, fails to satisfy the requirements of Rule 23(b)(3), the Court need not, and does not, reach whether Plaintiff has sufficiently carried her burden as to the adequacy requirement.

F.  Rule 23(b)(3)

As detailed above, Plaintiff has not satisfied the requirements of Rule 23(a), and thus the Court need not assess the class under Rule 23(b)(3). In any event, even if Plaintiff had sufficiently carried her burden concerning Rule 23(a), the Court would still decline to grant Plaintiff's motion for class certification, as she cannot show the additional requirements under Rule 23(b)(3).

Plaintiff must establish, in addition to meeting each of the Rule 23(a) factors, that at least one of the requirements of Rule 23(b) has been met. Here, Plaintiff seeks certification under Rule 23(b)(3). That provision requires that "questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The predominance requirement of Rule 23(b)(3) is more demanding than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal quotation omitted). In conducting this analysis, the court must consider "whether the putative class members 'could establish each of the required elements of their claims using common evidence.'" *Weiner*, 2010 WL 3119452, at *5 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001), *overruled on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006)).

As an initial matter, as Plaintiff has failed to satisfy Rule 23(a)'s commonality requirement, it follows that Plaintiff is likewise unable to satisfy the more demanding Rule 23(b)(3) requirement. In any event, Plaintiff's briefing fails on its own to satisfy her burden. Specifically, it is well settled in the Second Circuit that an analysis of predominance under Rule 23(b)(3) entails consideration of the "elements of the claims and defenses to be litigated," and "whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson v. Nextel Comms., Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).

Plaintiff presses four (4) claims for relief, yet does not conduct an analysis of the elements of each of her claims, nor mention her claims at all. (Doc. 34 at 11-12; Doc. 35 at 10-11). Instead,

Plaintiff leans entirely on the following blanket statement as her argument: "[Since] Defendants'
conduct is generally applicable to the Class as a whole . . . there are substantial questions of law
and fact common to all members of the Class, which will predominate over any individual issues."
(*Id.*; *see also* Doc. 54 at 14). This is insufficient.

Even if Plaintiff had conducted the proper analysis, the Court would still find the
circumstances as applied to the claims for relief insufficient to satisfy the predominance
requirement of Rule 23(b)(3). Specifically, as to Plaintiff's GBL claims alone, there appear to be
individualized inquiries concerning each putative class member's reasons for their purchase of the
Defendants' Products. Plaintiff claims, for example, that the "5%" nicotine label on the
Defendants' Products made her and the putative class members believe that they were "lower in
nicotine than they actually were," and thus "induced [them] . . . to purchase and/or pay the
requested price for the Products." (Compl. ¶¶ 43, 126-129). However, there are many other factors
involved as to why a potential class members would buy the Defendants' Products, other than
those stated by Plaintiff, that would necessarily involve individualized inquiry. *See, e.g.*, *Pelman
v. McDonald's Corp.*, 277 F.R.D. 82, 94-95 (S.D.N.Y. 2010) (holding that Plaintiff failed to
sufficiently show predominance under Rule 23(b)(3) as individualized inquiries existed where "a
person's choice to eat at McDonald's and what foods (and how much) he eats may depend on taste,
past experience, habit, convenience, location, peer choices, other non-nutritional advertising, and
cost," not simply because as plaintiff claims, they thought it to be "healthier than it was in fact");
*see also Weiner*, 2010 WL 3119452, at *6 (holding that "[t]here is a serious question whether
plaintiffs will be able to use generalized proof to show that Snapple's use of "All Natural" was
likely to mislead a reasonable consumer," and denying class certification as to Plaintiff's GBL §

349 claim as "individualized inquiries as to causation, injury, and damages . . . would predominate over any issues of law or fact common to the class.").

Accordingly, and considering all of the above, Plaintiff's motion for class certification is denied.[7]

II.    Default Judgment

As an initial matter, Plaintiff's counsel complied with Rule 55(a) and Local Civil Rule 55.1, and as noted *supra*, the Clerk of Court accordingly issued Certificates of Default against both Defendants. (Doc. 18). As such, the Court accepts the well-pled factual allegations in the Complaint as true and draws all reasonable inferences in Plaintiff's favor. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Thus, the Court now turns to its analysis under Rule 55(b)(2).

Plaintiff presses four (4) claims for relief: violations of Sections 349 and 350 of the New York General Business Law (Counts I and II); violations of "other state consumer protection statutes" (Count III); and breach of implied warranty of merchantability (Count IV). (*See generally* Compl.). The Court analyzes each *seriatim*, mindful that it "need not agree that the alleged facts constitute a valid cause of action." *Au Bon Pain Corp.*, 653 F.2d at 65.

A.    Sections 349 and 350 of the New York General Business Law (Counts I and II)

Plaintiff's First and Second Claims for Relief allege violations of both GBL §§ 349 and 350. "Section 349 'prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Shakespeare v. Compu-Link Corp.*, 848 F. App'x 474, 476 (2d Cir. 2021) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d

---

[7] Given the Court's foregoing analysis concerning predominance, the Court need not and does not discuss herein the "superiority" requirement under Rule 23(b)(3).

Cir. 2015)). Section 350 "prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Orlander*, 802 F.3d at 300 (citation modified). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to section 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002)); *see also Housey v. Proctor & Gamble Co.*, No. 22-888, 2022 WL 17844403, at *1 (2d Cir. Dec. 22, 2022) ("Section 350 of the GBL prohibits false advertising in the conduct of any business, trade or commerce, and is analyzed under the same reasonable consumer standard as Section 349").

"To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander*, 802 F.3d at 300 (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)).

Upon review of the parties' pleadings and submissions, the Court concludes that Plaintiff has established the elements of Counts I and II, sufficient to grant default judgment against Defendants in favor of Plaintiff individually, and as to liability only.

### B.  Violations of "Other State Consumer Protection Statutes" (Count III)

Plaintiff's Third Claim for Relief alleges violations of "other state consumer protection statutes" to the extent that Defendants' [sic] Products have been marketed in, and purchased by class members in the respective state." (Compl. at 37). However, Plaintiff concedes that she has only purchased Defendants' Products in New York and New Jersey, specifically, in Rockland County, New York and Wildwood, New Jersey. (Doc. 34-1, "Amiel Decl." ¶ 10). Accordingly, as the Court has denied Plaintiff's motion for class certification, Default Judgment is denied as to any

state consumer protection statute pled in the Complaint, except for New York (analysis detailed *supra*) and New Jersey.[8]

Plaintiff alleges violations of the New Jersey Consumer Fraud Act §§ 56:8–2 ("NJCFA"). (Compl. at 38). Under the NJCFA, plaintiffs must establish "1) unlawful conduct by defendant[s]; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and ascertainable loss," and it is settled that "[e]lements of NYGBL § 349 are very similar to the NJCFA." *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)).

Accordingly, considering the Court's analysis under the GBL (*see supra*), and upon review of the parties' pleading and submissions, the Court similarly concludes that Plaintiff has established the elements of Count III as to New Jersey (and New York) consumer protection statutes only, sufficient to grant default judgment as to Plaintiff individually on liability only.

---

[8] Specifically, default judgment is denied as to the following "other state consumer protection statutes": "Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107(a), (a)(10); Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code §§ 17200, 17500, 17580.5; Colo. Rev. Stat. §§ 6-1-105 (e); (g); Conn. Gen. Stat.§ 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. § 501.204; Ga. Code § 10-1- 393(a); Haw. Rev. Stat. § 480-2(a), (d); Idaho Code § 48-603(17); 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; La. Rev. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law § 13-301(1), (3); § 13-303; Mass. Gen. Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Miss. Code § 75- 24-5(2)(e),(g); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915(15); N.H. Rev. Stat. § 358-A:2; []; N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3; []; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02; Okla. Stat. Ann. tit. 15, §§ 753, 752(13); Or. Rev. Stat. § 646.608(1); 73 Pa. Stat. § 201-2(4); R.I. Gen. Laws §§ 6-13.1-1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code § 47-18-104(a); Tex. Bus. & Com. Code § 17.46(b)(2),(3),(5),(7),(24); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W. Va. Code §§ 46A-6-102(7); Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a)(xv)." (Compl. ¶ 151; *see also* Richman Decl. ¶ 19 n.2).

C. <u>Breach of Implied Warranty of Merchantability (Count IV)</u>[9]

Under the laws of the states of New York and New Jersey "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1); N.J. Stat. Ann. § 12A:2-314. Further, "goods must 'conform to the promises or affirmations of fact made on the container or label if any.'" N.Y. U.C.C. § 2-314(2)(f); N.J. Stat. Ann. § 12A:2-314.

Under New York law, it "is clear that, absent any privity of contract between Plaintiff and Defendant, a breach of implied warranty claim cannot be sustained as a matter of law except to recover for personal injuries.'" *Zottola v. Eisai Inc.*, No. 20-CV-02600, 2021 WL 4460563, at *7 (S.D.N.Y. Sept. 29, 2021) (quoting *Gould v. Helen of Troy Ltd.*, 16-CV-02033, 2017 WL 1319810, at *5 (S.D.N.Y. Mar. 30, 2017)). "That is to say, 'New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic.'" *Id.* (quoting *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556-57 (S.D.N.Y. 2016)). However, New Jersey law does not require such privity between purchaser and manufacturer. *See Amato v. Subaru of America, Inc.*, No. 18-16118, 2019 WL 607148, at *11 (D.N.J. Dec. 5, 2019).

Here, Plaintiff alleges that she purchased the Products from multiple physical locations, including "Ivy Stationers" and "Zafa Flow, Inc." located in Pomona and Nanuet, New York, respectively, as well as at the "Wildwood Boardwalk, Wildwood, NJ 08260." (Amiel Decl. ¶ 10). But Plaintiff does not allege that she purchased the Products directly from Defendants, nor from online sources. Nor has Plaintiff pled personal injury—her alleged injury is, instead, purely economic. (*Id.* ¶ 16). Therefore, default judgment as to Plaintiff's breach of implied warranty claim

---

[9] As Plaintiff has only purchased Defendants' Products in New York and New Jersey (Amiel Decl. ¶ 10), the Court conducts the breach of implied warranty of merchantability analysis only as to these two states.

premised in New York law is denied for lack of privity. *See Hoffman v. Kashi Sales, L.L.C.*, 646 F. Supp. 3d 550, 562 (S.D.N.Y. 2022) (dismissing the plaintiff's breach of implied warranty claim where products were purchased from non-party physical stores, "not directly from defendant," and thus lacked privity.).

However, in light of the applicable law and upon review of the parties' pleadings and submissions, the Court finds that default judgment is warranted as to Plaintiff's breach of implied warranty claim as to purchases of Defendants' Products in New Jersey, as no privity requirement exists.

Accordingly, the Court grants default judgment as to Plaintiff's Fourth Claim for Relief, limited to allegations of purchases of Defendants' Products in New Jersey, and as to liability only.

Defendants speak to but never actually refer to Rule 55(c).[10] Plaintiff asserts that Defendants cannot meet any of the factors under Rule 55(c), but focuses her argument largely on the willfulness of Defendants' default. Plaintiff argues that Defendants were properly served, were on notice of the case and the filings for a period of approximately nine months, and that Defendants efforts to explain their default falls short. (Plaintiff's Reply at 4-5; Richman Decl. at 7-8). The Court agrees that Defendants' default was willful.

Plaintiff filed the Complaint on September 27, 2024, and upon effectuating service, filed affidavits of service of the Defendants on October 15, 2024. (Docs. 7 and 8). Plaintiff's and Defendants' respective counsel have apparently been in communication concerning a potential resolution of the case since October 24, 2024. (S*ee* Richman Decl. at 7; Defendants' Sur-reply at 1). However, Defendants have not answered or otherwise responded to the Complaint despite

---

[10] Federal Rule of Civil Procedure 7(b) and Local Civil Rule 7.1(a)(1) require a notice of motion "specify[ing] the applicable rules or statutes pursuant to which the motion is brought." A brief is not a motion; thus, as Defendants did not properly ask for relief under Rule 55(c), such relief may be denied on that ground alone.

Plaintiff's multiple requested extensions of time on behalf of Defendants, which were granted by the Court. (Docs. 10 and 12). It is also important to note that Defendants' counsel affirmatively represented to Plaintiff's counsel, and to the Court, that she had no intention of Defendants entering an appearance in this case. (Richman Decl. ¶ 31; Defendants' Sur-reply at 5 ("Defendants' counsel indicated that they would not be entering an appearance because at that time [late 2024 and early 2025] Defendants had not engaged any counsel to proceed with litigation.")). Notably, and despite the Court granting the final extension of time to answer or otherwise respond until January 10, 2025 (Doc. 12), Defendants did not enter an appearance in this matter until June 15, 2025, one day before Defendants' opposition to the Order to Show Cause was due to be filed, and over a month after the Clerk of Court entered Certificates of Default as to Defendants. (*See* Docs. 42, 43 (Defendants' counsel's notices of appearance); Doc. 40; Doc. 18).

Defendants assert blanket and conclusory allegations to support their contention that their default was not willful, without citation to any case law in support of such argument. (Defendants' Sur-reply at 1-3, 5-6).[11] Specifically, Defendants appear to take the position that their financial situation and fact that they were defendants in other lawsuits brought by the State of New York and the City of New York, "required preparation of a staged response over immediate appearance in all the cases," and therefore should not constitute a "willful" default. (Defendants' Sur-reply at 1-2). Defendants also argue that Plaintiff mischaracterizes their default as "willful" stating that "Defendants have in fact, 'otherwise responded to the Complaint' in the only way they were able to do so at this time," apparently alluding to their non-appearance and periodic settlement

---

[11] Defendants' Response fails to include reference to their default. Instead, it appears to be improperly structured as a motion to dismiss. Defendants' time to file a dispositive pre-answer motion has long passed. The Court, therefore, takes the brief for what it's worth and considers its application to the elements relevant here, namely, "whether a meritorious defense is presented."

communications with Plaintiff. (Doc. 55 at 1 (Defendants' July 1, 2025 Letter to the Court requesting a "sur-reply")).

As a threshold matter, the Court is unaware of any alternative types of "respon[ses] to the Complaint" that do not first entail appearing in the case. While the parties may have been in communication during the pendency of this litigation to try and resolve the matter, this does not supersede Defendants' obligations under the Federal Rules of Civil Procedure, or Defendants' counsel's obligations to the Court and to her client. *See Select Harvest USA LLC v. Indian Overseas Bank*, No. 22-CV-03931, 2023 WL 2664079, at *6 (S.D.N.Y. Mar. 28, 2023) (noting that "a defendant's responsibility to file a responsive pleading is not obviated by participating in efforts which could, in theory, later resolve the case.").[12]

Upon review of the record at hand, and the Parties' arguments, it is apparent to the Court that Defendants actions were willful as they: a) were properly served and have known about this lawsuit since on or around October 24, 2024;[13] b) failed to answer or otherwise respond to the

---

[12] On June 15 and 16, 2025, the day before and on the day that Defendants' Response to the Order to Show cause was due, Defendants' counsel filed multiple letters with the Court requesting an extension of time to respond to the Order to Show Cause. (*See* Docs. 44 and 47). Defendants represented to the Court, in their June 16, 2025 letter (Doc. 47) that "Plaintiff's assertion that Defendants have 'willfully chosen not to' participate [in this action] is inaccurate," stating that "[s]ince the Court's May 16 Order, [they] have diligently begun preparing a response." (Doc. 47 at 1). Defendants however, fail to mention their failure to appear or participate in the previous six (6) months of litigation that occurred prior to the Court's issuance of the Order to Show Cause.

[13] Defendants appear to also belatedly argue, on Sur-reply, that they were improperly served. (Doc. 26-3 at 3). "[A] properly filed affidavit of service by a plaintiff is *prima facie* evidence that service was properly effected." *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014); *see also Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) ("In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service . . . ."). Here, Plaintiff submitted proper affidavits of service establishing that it served Defendants (Docs. 7 and 8). Defendants state, in their Sur-reply, that despite Plaintiff's allegations of how "appropriate its service was . . . Defendants had long left the premises to which Plaintiff was mailing its cease and desist letters and complaints" and only "found out about the filings through the media." (Defendants' Sur-reply at 5). Yet Defendants fail to offer any evidence supporting the claim that they left such "premises," such as contemporaneous records or a declaration of the corporate officer touching on such issue. Thus, this "conclusory denial" of service "fail[s] to rebut the presumption of service created by the process server's affidavit." *HSBC Bank USA v. Gifford*, 224 A.D.3d 447, 450 (1st Dep't 2024).

Complaint, or enter an appearance, despite Plaintiff's willingness to request multiple extensions of time for Defendants to do so; and c) only entered an appearance once the Court issued the Order to Show Cause and directed Defendants to respond by June 16, 2025. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015). Further, Defendants' argument that they were being simultaneously sued by other parties does not constitute a "satisfactory expla[nation]" sufficient to avoid a finding of willfulness—Defendants cannot pick and choose when and to which lawsuits they will respond. *See AEye, Inc. v. All Blue Falcons FZE*, No. 22-CV-04964, 2025 WL 587046, at *4 (S.D.N.Y. Feb. 24, 2025) ("Conduct may be found to be willful where it is egregious, not satisfactorily explained, or is rationalized by flimsy excuse."). Accordingly, Defendants' actions demonstrate that their default was deliberate and thus willful. *See Jaramillo*, 675 F. App'x at 76-77. Further, as the Court has determined that Defendants' default was willful, it need not, and does not, consider the remaining two prongs of the 55(c) analysis. *Id.* ("[a] court need not consider all three criteria . . . because its determination that the default was willful is sufficient to support the denial of a motion to vacate.").

Accordingly, Defendants are not entitled to relief under Rule 55(c).

## CONCLUSION

Based upon the foregoing, Plaintiff's motion for class certification is DENIED and Plaintiff's motion for default judgment as to Plaintiff individually, on liability only, is GRANTED in part and DENIED in part. Specifically, default judgment is: GRANTED as to Plaintiff's First and Second Claims for Relief (Violations of GBL §§ 349, 350); GRANTED as to Plaintiff's Third Claim for Relief (violations of "State Consumer Protection Statutes") to the extent pled under New Jersey's respective consumer protection statute, but otherwise DENIED; and GRANTED as to

Plaintiff's Fourth Claim for Relief (Implied Warranty of Merchantability), only as to Plaintiff's purchases of Defendants' Products in New Jersey, but otherwise DENIED. Defendants are not entitled to any relief pursuant to Federal Rule of Civil Procedure 55(c) because their default was willful.

Plaintiff is directed to file a proposed Judgment as to liability only in accordance with the Court's rulings herein by **November 7, 2025**.

A pretrial conference for the inquest on damages will be held in person on November 25, 2025 at 12:30 p.m. in Courtroom 520.

**SO ORDERED:**

Dated:    White Plains, New York
        November 4, 2025

_____
PHILIP M. HALPERN
United States District Judge

23