UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAYLEY AMIEL, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>EVO Brands, LLC,and PVG2, LLC,<br><br>       Defendants. | Case No. 7:24-cv-07327<br><br>Hon. Philip M. Halpern |

## JOINT AFFIDAVIT OF PATRICK BELTRAN AND NICK MINAS ALFARO

We, Patrick Beltran and Nick Minas Alfaro, being duly sworn, depose and state as follows pursuant to 28 U.S.C. § 1746:

1. Patrick Beltran is a co-owner and senior officer of EVO Brands, LLC ("EVO Brands") and PVG2, LLC ("PVG2"); hereinafter EVO Brands and PVG2 are sometimes collectively referred to as the "Defendants"). Nick Minas Alfaro is also a co-owner and senior officer of EVO Brands. During the period from the time January 21, 2021 (the date upon which Defendant EVO Brands purchased the Puff brand assets) through the time the Defendants ceased sales in the States of New York and New Jersey ) the "Relevant Period") we each had responsibility for oversight of Puff branded products, including matters relating to product distribution through the direct to consumer sales channel and regulatory compliance in the United States. Prior to the Relevant Period neither Defendant had access to any records relating to the Puff brand business sales nor were the Defendants ever given access to those records.

2. We make this Affidavit based upon our personal knowledge and our review of Defendants' business records. Where statements are based upon our review of records, we believe such records to be kept in the ordinary course of business and to be reliable. Unless otherwise indicated, the statements herein reflect facts known to at least one of us, and we each adopt such statements as our own.

3. EVO Brands and PVG2, LLC are Delaware entities that, during the Relevant Period, were involved in the design, branding, and distribution through the direct to consumer sales channel of Puff branded disposable electronic cigarettes in the United States.

4. We have reviewed the Affidavit submitted by Plaintiff Hayley Amiel and the locations she identified as her primary points of purchase of Puff Bar products.

5. Based on our review of EVO Brands' customer and distribution records from 2021 through the present time, Defendants did not have any direct sales relationship with any entity or any distributor or vape shop mentioned by Plaintiff including Ivy Stationers or Zava Flow Inc.

6. Defendants did not ship Puff branded products directly to these establishments, nor did we have any contracted or authorized distributor that we understand to have designated either of those businesses as an authorized retail account.

7. Plaintiff has not provided Defendants with packaging, serial numbers, batch codes, or photographs of the specific products she purchased. Without such information, it is not possible to authenticate those products as genuine Puff branded devices manufactured for or distributed by Defendants, as opposed to products bearing the Puff name or trade dress that were produced or sold by others without authorization and/or which were completely counterfeit, black market products.

8. Plaintiff alleges that she purchased Puff branded products approximately 142 times in New York and approximately 2 times in New Jersey over the course of several years. Plaintiff does not even identify the various locations at which she purchased the New York devices and in any event the Defendants never sold directly to any wholesalers or distributors in New York or New Jersey.

9. Defendants have no records from which to confirm the number, dates, or locations of Plaintiff's alleged purchases, and given the absence of receipts or retailer data, we cannot verify the accuracy of those counts nor the provenance of the units Plaintiff allegedly purchased.

10. Based on our understanding of typical consumer behavior and sales data from authorized channels, 140 or more individual purchases by a single consumer over the alleged time period would place Plaintiff at the very high end of consumption compared to an average adult user. While such usage is not impossible, the figure of 142 purchases appears to be an estimate rather than a documented count.

11. Plaintiff further states that she paid approximately $18–$22 for each standard Puff branded device and approximately $22–$28 for each Puff Plus device.

12. During the early years of the Puff brand's presence in the U.S. market, Defendants' suggested retail prices for standard Puff devices was generally around $10 per unit, and suggested retail prices for Puff Plus devices were generally between approximately $15 and $20 per unit. Wholesale prices were lower.

13. Prices in the range reported by Plaintiff are therefore at or above the high end of expected retail pricing and are consistent with independent retail markups by unauthorized sellers, not with pricing decisions made by Defendants at the wholesale level.

14. Because Plaintiff has not produced receipts or transaction records, Defendants cannot confirm the exact prices she paid or whether the amounts she describes reflect typical or inflated retail pricing by unauthorized vendors.

15. This Affidavit is submitted to assist the Court in evaluating Plaintiff's damages claims and the provenance and authenticity of the products at issue.

We declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge and belief.

Executed on November 25, 2025

**EVO Brands, LLC**

By: *Patrick Beltran*
_____
Patrick Beltran
Co-Chief Executive Officer

By: *Nicholas Minas Alfar*
_____
Nick Minas Alfaro
Co-Chief Executive Officer

**PVG2, LLC**

By: *Patrick Beltran*
_____
Patrick Beltran
Co-Chief Executive Officer

By: *Nicholas Minas Alfar*
_____
Nick Minas Alfaro
Co-Chief Executive Officer